Your Honor, my name is Nolan Plinson. I am here representing the appellant plaintiff in this case, Steve Rogers. First, let me say that I wanted to make sure that we understand the issue that you just stated. It is stated by the athlete in this case. And it is simply, it has to do with a private patient's age, disability, and knee health. You know, in recent years, Your Honor, we've seen an erosion of the ADA where it's unclear exactly what is covered and who is covered. What we normally can rely upon, though, is if we have a finding of uphold cause by the EEOC, that we hope we can put it to a jury. It is not absolute judgment. It was a pre-Toyota finding, right? Sorry, Your Honor. It was a pre-Toyota finding? It's a pre-Toyota. The Toyota case in the Supreme Court was the EEOC's finding prior to the U.S. Supreme Court's decision in Toyota. I wish I could talk that clearly. I wish I were as smart as you. Your Honor, however, in this case, you've got a finding of uphold cause. And the key thing here is that the finding pertains to the fact that the EEOC had to determine first that my client was a qualified individual with a disability. And that is why we say that you must take this decision and allow it to the jury. Because under Dipper, what the court said was when there is a difference of opinion between the district judge and the EEOC on that same issue, then it is, in fact, clear. What did the EEOC say here about Mr. Rogers? They said, first of all, he was a qualified individual with a disability. Okay. And that he was subject to a... Did they issue findings of fact? They only had a finding of probable cause. Okay. And so what did they say in their finding of probable cause? It was under reason. Yes. Okay. I didn't have it. It's not going to take you very long. It is very short, and it is right here. Just one sentence, right? No. No. Okay. The charge of the party... Excuse me. This determination was dated sometime. It says, I issue the following determination on the merits of this charge. Respondent is an employee of the EEOC, under the Americans with Disabilities Act, as amended, etc. Examination of the evidence indicates that the charge of the party is a qualified individual with a disability. Number one. Respondent was aware of the need for accommodation as charge of the party was permanently restricted from performing his job duties as heavy equipment operator. Charge of the party did receive light duty work for a short time, and it was then home where light duty work was no longer available. However, respondent did not perform a reasonable accommodation analysis required by the ADA. Respondent did not attempt to reassign charge of the party to a temporary vacant position, which he was successfully performing because he was due to a non-disabled employee. The ADA specifically lists reassignment to a vacant position. But you've only read one sentence that goes to the question of whether he is a qualified individual, whether he has a disability. Only one sentence, and it's entirely... I mean, all the rest is premised on that sentence. I mean, you don't have a question of accommodation unless you have a disability. You don't have a question... There's a single sentence you've read, and it's a single sentence with no analysis, no evidence. It just states a simple conclusion. Examination of the evidence indicates the charging party is a qualified individual with a disability. But there isn't much to it, and we don't, in our case, give much deference to EEOC findings that are without reason like this. They don't count for much. I agree with you. Your argument would be if you're saying that I would be lost if that's all I had. I'm thinking of Coleman, Coleman v. Quaker Oats. I understand, Judge. I agree with you with that at all. If that's all that I had, they have no basis, Congress, to make a decision. You have very careful findings. That's not going to be dispositive of the issue. What is dispositive of the issue is the fact that we qualify as a disabled person outside of the EEOC findings. We qualify because Mr. Rogers was unavailable. Now, he was recluded from a broad-based job, and that broad-based conclusion was based upon a finding of a vocational legal education counselor. What is that? I mean, how would you describe the class or group or type of job that he was precluded from? The counselor decided that as far as he was concerned, that was something with the doctor, something with the employer. Just tell me what it is. What is the class of jobs that he was precluded from performing? Well, he was willing to go to Phoenix. He was willing to go to Phoenix. So why doesn't all of Phoenix count as a geographical area as well? Why? I mean, if he's willing to go for this job, then why not all of Phoenix? Why don't we then look to that geographical area in determining whether or not... Because that goes to the issue of accommodation rather than geographic areas. Well, but you've got to... His application was that he could go to Phoenix. He was ready, willing, and able to enter his accommodation. But you can't very well restrict him to this small community for one purpose of the case, but then, say, when it comes to accommodation, here, you know, they had all these other jobs in Phoenix that he was willing to go to. You can't play that issue inconsistently on different parts of the case. Again, Your Honor, with all due respect, I don't believe I'm playing it inconsistently. I'm playing it accurately, portraying it accurately. The fact is that the geographical location existed at a time that the accommodation was supposed to be asserted or attempted. Because he's willing to go to Phoenix or Cleveland or New York doesn't make a difference, really. Except that it says, look, I'm ready, willing, and able to be accommodated. And in this particular case, the employer said, absolutely not. We're very, very sorry, but I can't do it. Yeah, but didn't they try to qualify him as a meter, either? He was, that was part of the accommodation. That was something that he was willing to do. He was willing to do pretty much anything. It's important. They instead fired him. Let me ask this. In order to get past the threshold, you have to get past the summary judgment threshold as to whether or not he's a disabled individual. And under the statute, that means he has to have a physical impairment that substantially limits one or more major life activities. Now, in his now stabilized condition, he can't lift in his work more than 50 pounds. There are certain sorts of things he can't do, and you roughly summarized accurately. We can't do heavy or very heavy work. I'm not sure that that in itself qualifies as being unable to perform one or more major life activities. Well, that was a polite way of saying, in my view, that doesn't qualify. So talk me out of it. He lives in St. John's. He's precluded from doing the jobs he wanted to do. His vocational rehab guy, who was assigned to this particular case, said, you're still precluded. The only thing we can find for you is to come on down to Phoenix. So as far as the preclusion was concerned, the broad base of jobs, the heavy lifting, the heavy types of jobs was sufficient. And, again, Judge, the question is, you're unsure. I'm not sure that's true. No, no, I misspoke. It was a misdirected form of polite speech. You'll never hear the thing back. What did you do with Thompson? Thompson seems to direct their point. I mean, the woman is the petitioner there. The complainant there is a nurse. She can do everything a nurse can do except lift. Very highly analogous to your client. And because she can't lift, she's unable to lift patients. And so she can't be a nurse, because lifting patients, her ability to lift patients, can be part of, is part of being a nurse. And we held, oh, no, that is not a disability. Your Honor, in, and it was a good panel to cite that, in specifically, there's no vocational vehicle petition counselor that says that she is precluded from a broad range of jobs. As a matter of fact, the vehicle petition counselor said, no, no, no, she can do a lot of different things. She can be a nurse. And I think the key here is, is if you have an EMC client. But your guy can lift more than she could lift. I mean, your guy can lift up to 50 pounds. But she could only lift up to 20 pounds. I wish that, in that particular case, the counsel complainant would have gotten a vehicle petition counselor that was strong enough to overcome the other guy. But apparently it was not. And I think, excuse me, what happened was, was in Thompson, there just wasn't enough evidence in the court to say that Ms. Thompson was precluded from a broad range of jobs. Here there is. And again, if you don't buy that this broad base of jobs included heavy lifting and coupled with the EEOC charge he was called by an individual with a disability, I have a problem. I really do. But as far as he did, he was disabled to such an extent that he was not. The underlying order in this case, I think that's what I really need to touch on, is that the judge, Judge Spielberg in this case, district judge, said, and this is critical, that as far as he was concerned, working was not what we were talking about here. And he said that because in his order it says that we claim that our findings that Mr. Ryder was able to work. Of course we claim he was able to work. Otherwise the ADA doesn't apply. And I just didn't quite understand why it was that Judge Spielberg would, one, say we weren't alleging that was the thing we were talking about working, and two, why he ignored totally the EEOC finding to the extent that, excuse me, not the EEOC finding. I apologize. The dean analysis, and we brought this to his attention twice. We said to him, Judge, you know, take a look at this. It's important because it distinguishes us from Tom Stern. And as far as you're concerned, at that point in time, you have to allow us to go to a jury to decide whether or not this man is disabled from a broad base of jobs. If this case, and I just want to reserve some time and I'd like to just sum up here. This is an important case in that it says what we can show in order to prove a disability. What we can show is that the EEOC found in our favor and that he was recruited for a broad base of jobs. In addition, he did suffer a very severe injury. So basically, you distinguish your case from Thompson on better vocational experts. That's the distinction. Number one. Number two, the lady could do the job. There were many registered nursing jobs she could do, and she lived in a big city. Very, very different than Thompson. I think that it seems to me that had, like I said, had there been a regal official counselor strong enough to overcome the other one, then we would have jury. Counselor, are you suggesting the question then of disability turns on whether you live in a big city or a small town? No, that's only one option. It's only one of many. Whether or not there's a broad base of jobs you can do, whether or not you have a disability, you know, whether or not, it's just one of many. And where does the big town, small town come in? I mean, where's the source of law for that? The EEOC regulations themselves indicate that you can consider a geographic area. In terms of whether someone is disabled, the fact of disability? Yes. So I could be disabled in a small town but not disabled in San Francisco? Yes, you can. With exactly the same condition? Yes, you can. Okay. Your Honor, I can pursue the rest of my time. Okay. May it please the Court, on the sole and only behalf of the consultant and project. Your Honor, in order to accept this, the appellant's argument, the court would need to take the whole step of a friend becoming a springboard for social change. In order to accept the appellant's argument, any sort of a living injury automatically equates to a disability. Well, I don't think he's saying quite that. Well, I guess he said in a small town, I guess. Well, in a small town with a vocational expert, with an aggressive vocational expert. And a multitude of other unspecified factors. Your Honor, we are unaware of any law that says that the Americans with Disabilities Act was intended by Congress to provide an enhanced definition of disability to someone based upon the size of their home, their residence, their city. The act is silent in that regard, and we're not familiar with a case law that applies to that. Your Honor, there is no evidence to provide by the appellant that there was a major life activity that was impaired. In fact, as the record indicates, there is a litany of jobs, including planner, crane operator, meter reader, customer service representative, warehouse worker, any type of job. Jobs taking heat readings from boilers and turbines, computer repair. Those are all jobs. Those are all jobs, Your Honor. But that's not the test, is it? The fact that there are lots of jobs available is not the test. The question is, have you been precluded from a class of jobs? Your Honor, I think we're both right on that point. Both? You mean both of you? No, Your Honor. How do you know what time's my view is? Just by the suggestion of your question. I think that you're correct, Your Honor. You're not one of those foolish lawyers who infers what judges believe from their questions, are you? Your Honor, I probably am a foolish lawyer, and I'll move on to the next point. Well, how about answering my question? Or even letting me finish it. The question is, it does not matter that there are lots of jobs that an appellant could do. The question is, is he precluded from performing a certain class of jobs? And counsel has said, the class of jobs, I mean, he's arguing, his evidence in the record says, he can't do the class of jobs that require heavy lifting. He can't run a jackhammer. He can't be a hard carrier. He can't be a longshoreman. You know, a whole class of jobs that require heavy lifting. Why isn't that a perfectly fine classification of jobs, so that if you are excluded from that classification, you are then disabled? Your Honor, that's not what the record represents. The record represents that he is solely precluded from heavy lifting. In fact, the record will reflect that one of the jobs he has to be involved in out in the county... I'm sorry, I'm sorry. What doesn't the record reflect? The record reflects he can't lift, do heavy lifting, right? Okay? Now, let's take longshoreman, right? You know what a longshoreman is? Yes, Your Honor. It's a guy who does heavy lifting. Yes, Your Honor. Okay? Do you think the plaintiff can do longshoreman? Can he be a longshoreman? I don't know, Your Honor. Well, that's what we have juries for, right? But we can presume that all the class of jobs require heavy lifting. Things like hard carrier. You know what a hard carrier is? It's a guy who carries heavy... Hard carrier. You know, somebody on the construction site who carries heavy objects. Those kinds of things. He can't do that, right? Why isn't that a fairly good definition of jobs? Any job that requires heavy lifting, he can't do, and that's a certain class of jobs. We used to call them manual labor jobs or unskilled labor jobs. You know, they used to be sort of a pejorative term for them, but they're perfectly good work. They earn a fair amount of money, and the plaintiff can't do any of them. Why doesn't that make him disabled? Your Honor, because in the workplace, first of all, the EEOC regulations don't constrict it to just one narrow definition of the court's suggestion. What do they say? What do they say? I refer you to the Code of Federal Regulations, Section 1630.2J. A class of jobs or a broad range of jobs compared to the average person. Okay. So it's a class of jobs or a broad range of jobs. I don't know how they differ, but why isn't all jobs that require heavy lifting a broad range of jobs? In fact, I don't understand what a broad range of jobs would mean if it doesn't mean that. Well, Your Honor, in this case, I can only rely on the... You rely on the regulation. Now you tell me how the regulation helps you. What is it in this regulation that helps answer my question in a way that's helpful to your case? Your Honor, the regulation helps me in that the court determined, the district court determined, that by the appellant's own admission, he was able to perform a variety of jobs, that there wasn't a narrow, broad class of jobs, I guess, that the court has defined in this case. I sort of feel like Abbott and Costello, you know, what's, I don't know, third base. We started off with you saying there are lots of jobs he can perform. But the fact, and I said the fact that there are lots of jobs he can perform doesn't mean he's not disabled. A blind person can perform lots of jobs. There are all sorts of things a blind person can do. Type on a keyboard, you know, all sorts of things, but they surely cannot fly a plane or drive an automobile. And one would not, you know, one would say this is a class of jobs that a blind person can do, and therefore a blind person is disabled, right? Why isn't not being able to lift something over 50 pounds just like being blind? You can do lots of things, tons of jobs out there, but there are certainly classes of jobs or broad ranges of jobs you can't do. You can't be a longshoreman, you can't be a heavy equipment operator, you can't be a guy who carries heavy equipment, heavy loads in a construction site, whatever they call them, hard carriers. Why isn't that perfectly consistent with the regulation? The same reasons, of course, Tomson versus Tomson. Ah, Tomson. Tomson, lifting injuries, although they were substantial in lifting injuries. You're giving up on the regulation, I gather. You're not going to get anything out of the regulation, I gather. You're giving up on the regulation. You had cited the regulation. I just want to make sure we're giving up on that one. We're now to Tomson. Okay? Your Honor, we live with Tomson specifically at 121.537. The court addressed the regulation and stated that Tomson had not raised a genuine issue of fact as to whether an injury entails her general ability to work. To establish the substantial limitation of Tomson in this country, that she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person. The inability to perform one particular job does not constitute such a limitation. That is the law, and I'm certain, if on the other hand... Well, that's right. And what opposing counsel says is she didn't have a vocational expert. All she said is, I can't perform my current job. So I didn't have anybody. There was no evidence in that case saying there's a broad range of jobs or a class of jobs he can't perform. So there was a failure of proof. Counsel now represents he's got a vocational expert that says, not only can't he perform his current job, but there's also a whole class of other jobs that also require heavy lifting that he can't perform. So that's how you distinguish a Tomson. Why isn't that good enough? That isn't good enough, Your Honor, because this case is almost on all fours with Tomson in the case that, in this case, the appellant actually demonstrated to perform a variety of jobs well beyond the single job that the appellant indicated he could not perform. In Tomson, the individual also went on to perform a variety of jobs, also in the health care industry. In this case, although Sullivan Brothers, I believe, did not perceive the appellant to be disabled, the appellant was provided with a variety of different jobs, even in the limited geographical location of St. John's, Arizona, whereby they could perform the job. So this job is, I mean, this case is comparable to Tomson. Okay. Your Honor, in order for the Court to accept this argument, we believe that it would have to undermine Tomson v. Holy Family hostage. Also, we believe that the district court properly erred in favor of the appellee in the tribunee, because the scope of the complaint was not claimed to be consistent with the EEOC decision. Once again, I would like to ask the Court to take a look at the scope of the appeal. A consolidated appeal is based here on the Court's decision not to amend a judgment or to have it retried. But the record is absent of any sort of manifest injustice or manifest error that would shift or put any Court to overruling of Justice — excuse me, Judge Stewart's decision. I have a question, Your Honor. We believe that the appellee has — the appellant has failed to establish that he had a major — You have seen the report of the vocational consultant? I beg your pardon? You have seen the report of the vocational consultant? Yes, Your Honor. What do you make of this thing where he says, These physical restrictions indicate that Mr. Rogers is incapable of working — of work classified as — These physical restrictions indicate that Mr. Rogers is capable of work classified as sedentary, light, and medium, as defined by the U.S. Department of Labor, Dictionary of Vocational Titles. He is unable to engage in work classified of heavy or very heavy. You think that counts for nothing? Do I think that counts for nothing? I'm sorry. You don't think that's enough? No, I do not think that's enough, Your Honor. I think clearly, as the Court reviewed the scope of the EEOC finding, and the position made by the appellant himself, there are a whole variety of jobs for the person who has the appellant to perform. You know, I know you've been around this barn before, but I'm reflecting on it, and I'm trying to see if I can get any further along with it. And that's to say — I'm just looking at the regulations. And with respect to major-like activity of working, the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities. In addition to the factors listed above, a factor is the geographical area to which the individual has reasonable access. Well, there's the case. He can't do heavy or very heavy jobs. And apparently, at least this is the argument, and there's some evidence to back it up, that in the small community in which he lives, there are not a lot of jobs except for heavy and very heavy. Maybe you're going to want to argue what reasonable access means with respect to geographical. Maybe you want to say broad, but this is not broad enough. Help me understand how these terms in the regulations apply to this case. Your Honor, what helps me understand it is the sudden case that we cited in our brief before the U.S. Supreme Court with the consistent geographical area and the reasonable access that we were just addressing. And they indicated the number and types of jobs, he was likely to utilize a similar training, et cetera, applied to that provision of the federal regulation. In that case, the court determined that jobs utilizing the individual's skills, but perhaps not their unique or individual talents. When those are available, one is not precluded from a substantial class of jobs. That's precisely the case in that bar. I didn't understand that answer. He's precluded from all kinds of heavy and very heavy jobs. Is that right? Yes, Your Honor. And if he is precluded from all heavy and very heavy jobs, why is that not a broad range of jobs? That sounds pretty broad to me. I understand he can do other work, but the question is, is the work from which he is precluded a broad range? I'm not trying to expand it. I'm trying to understand it. And that's about the best we can do? Well, Your Honor, I rely on such a case. It also takes into account that we also rely on a similar motor manufacturing case regarding the care of a scrutiny when the court applies regarding a person's disability. What the court is suggesting is that a back injury, because a person can't do heavy lifting, automatically that does satisfy the broad class of jobs that condition. Well, but the regulation is qualified by training and experience. That is to say, can't do heavy or very heavy work with his training and experience. So that may be a very different matter whether I can't do heavy lifting. My job doesn't require me to do heavy lifting. But he's basically your high school graduate for whom the range of employment activities is more restricted and for whom heavy and very heavy jobs is a more important category. That's what the regulation says. It turns out he's quite a smart and resourceful man. It turns out he's quite a smart and resourceful man. Okay. Thank you. Thank you, Your Honor. Okay. I think summing this up, though, if this was on the other shoe, if Mr. Calderon was the affluent in this case, the question, I guess, would be whether or not there was enough evidence in the lower court to support the fact that my client was disabled and my client was, that some of the lawyers were excluded from a broad range of jobs. I think Mr. Calderon's answers reflect the fact that it's very, very difficult to argue that his own vocational experts said that he was disabled. So if the shoe was on the other foot, if we were trying to support the judge's ruling that it would go to trial and be a directed burden or something along those lines, I think that tells us that we complied with the rules regarding what it needs, what we need to show with regard to a prime official case and that this matter has to go to the jury. The jury would come up with the evidence. Is this vocational expert, his vocational expert or yours? Theirs. They hired SRP in the workers' compensation case, they hired this gentleman to do what he did. There was one vocational expert. Yes. And this is the report we have here. Yes. There's another counselor. Vocational consultant, he's called, Inc. Now, the vocational expert made the assumption or the assertion, and in doing his analysis he assumed that Mr. Rogers was willing to relocate to Phoenix, to the Phoenix metropolitan area to participate in vocational rehabilitation and to be available for alternative placement with a project. I'm still having difficulty understanding this geographic business and how you want to limit him to the small community looking for a job and yet have him be willing to show, oh, look, I was willing to go to Phoenix to be accommodated, and they weren't willing to do it. Either he's willing to go to Phoenix and then we look at the whole market including Phoenix. I don't even know whether his town is in relation to Phoenix, whether it's a few miles or much, but whatever it is. Four hours. Okay. Well, then he's, huh? He has eight children, too, Judge. It was substantial. In response to your question is he willing to move? I'm sorry, what does the eight children have to do with that? It would be very difficult for him to move, Judge. But he says he is willing to move. Yes, and I don't respond to that. I think that it seems to me that his willingness to move has to do with the accommodation, not his disability. Otherwise, any person who is limited by a geographic area could be subject to have that totally taken away. The employer says, look, are you willing to move? And he goes, yeah. But that is the accommodation, not the disability, not whether or not you have it. Well, I realize you want to compartmentalize it like that, but I don't see how you can. If you are saying, you are claiming, look, they had a job for me in Phoenix, I was willing to go to Phoenix, and they wouldn't give me the job in Phoenix, and so they didn't accommodate, you want to make that argument, why don't we have to look, take it as a given, that you can and are willing to go to Phoenix insofar as geography matters for purposes of determining whether you are disabled. Well, Judge, I wouldn't be standing here if they would have given me the job. You know, they said they would be at lip service to it, and when the time came, they didn't do it. And what I'm saying, Judge, is had they done it, it wouldn't be here, because they have a job, everything would be fine. You know, you've managed to not answer my question, to say something totally irrelevant. We wouldn't be here. You know, what good does that do me? Do you understand my question? Yes, I do understand your question. Okay, what does your answer have to do with my question? The cause, Judge, the question... Look, for purposes of the case, don't we have to assume one way or the other? Either we assume he's stationary in this small town in Arizona, or we assume that he's able to and willing to move to Phoenix, and we can determine it for both issues, for all issues. Either we view him as being a part of a plant in this small town, for whatever reason, or we view him as somebody who's mobile, and then we take into account the entire market. I can't see how you can separate and say he's willing to move for accommodation, but he's not willing to move for purposes of determining whether other jobs are available to him.  I don't have an answer. I cannot answer the question, except to say again that it has to do with the accommodation. Well, how about that's not a terrible position? That's an answer. I mean, that's... Judge, that's if you look at a client... Well, that's the way I look at it. You talk me out of it. You've got 53 seconds. Here's your answer, and I've got 50 seconds to give you your answer. It may or may not be convincing. The regulation says to which the individual has reasonable access, and you might be willing to say, my client was willing to be such an accommodationist on his side, he was willing to go somewhere where there was actually quite unreasonable access, and for you to use that concession against him is really mean. He forgets who appointed me to this court. Okay, thank you. Case is argued. We'll stand some minutes. Thank you.
judges: Kozinski, W. Fletcher, Bybee